Thank you. Good morning. May it please the Court, my name is Angela Malala-Hanson, and I represent the appellant, Juan Morales-Isabarras. Could you pull the microphone closer to your face so the people in the rear of the room can be aware of what we're talking about? Thank you, Your Honor. I'm going to try to reserve my time, two minutes, for rebuttal. This case involves a question of whether the district court had jurisdiction to revoke Mr. Morales's term of supervised release. His term had expired at the time that the hearing was held. And we have a very unique set of circumstances here that do not exist in any of the cases that have been cited by either party. We have undisputed facts here in the Court below. Mr. Morales was on Federal supervised release for a Northern District of California case in San Francisco. He was released from custody, deported. A year after his release, while he was on supervised release, he returned to the district court. In 2006, he was apprehended in San Diego and prosecuted there. At that time, the district court in this Court issued a warrant for his arrest for the violation of his supervised release. This was in 2006. He was not guilty. Ginsburg. May I just ask you a question about that warrant? Your briefs seem to indicate that the arrest warrant had to be executed within a specific period of time. Where does the statute say this? The delayed revocation statute is implicated here simply because the revocation happened after his term of supervised release expired. What the statute requires the Court to analyze is whether the delay here was reasonably necessary. So the warrant was issued on time, right? The supervised release had not yet run out. And then there were a series of events, including that he was deported, that he entered reentry illegally, there was prosecution leading to conviction on two different illegal reentry charges, he was in Federal custody for a period of two years. And in looking at our cases and in cases out of the circuit like Madden, it seemed like all of these different time periods would not be considered, would be reasonably necessary for a delay. I mean, they would not count against the district court's jurisdiction. So, for example, in Madden, the Court said, you know, all this period when he's either in custody or he's – there's litigation about his Federal offenses, the government has a good reason for not executing the warrant. Now, why – when I added up all these time periods, it seemed to me that there wasn't really any period that would say the government should have executed his warrant earlier. What period do you think the government should have executed the warrant? Well, the moment he was released at a minimum from bureau prison's custody, serving that two-year sentence from San Diego, that warrant should have triggered right then, and he should have been brought up to this district to face that violation. So you're saying – let me just look at the timeline here. So you're saying he was in prison for 24 months, correct? That's right. And then he was immediately thereafter deported to Mexico. So you're saying – He was released on July 15, 2008, from the Federal Bureau of Prisons, despite the fact that there was a warrant in this district. So I have that he was deported to Mexico on July 15, 2008. Is that incorrect? Your Honor, I'm not sure if that's his deportation date or the date of his release from Federal custody and when he went into Federal immigration custody. So if he went from – he was released from Federal prison but then deported, your argument is that in between the time he was released from Federal custody and deported, the government had to execute the warrant at that period, and its failure to do so was a mistake, it was admitted error, it was slipping through the cracks, and it's the normal procedure, Your Honor, that is illustrated by exactly what happened in this case in 2012. Mr. Morales returned in 2012 in Arizona, and authorities finally caught the old, stale 2006 warrant. What happened in that district is part of the record, and it's exactly what happens in these cases all the time. The defendant is on supervised release in another district. So you're not arguing that the 2-year period when he was in Federal custody, that the government should have pulled him out of Federal custody and executed the warrant at that point? That is not our argument here. The Court need not make that finding, because that's not what happened. And during the period when he was deported in Mexico, and he was in Mexico, you're not saying they should have executed the warrant then, because they couldn't have found him in Mexico without extradition proceedings. Is that correct? No. They had to actually execute the warrant sometime before they deported him, while he was serving his 2-year term. And what do you rely on for that, for that principle? Because the government had to have known that in a case like this, the defendant would be deported. They have to act on the warrant. They didn't act on it. They offered no reason to explain why it was necessary to actually fail to bring him up here to this district to face the charges. No reason is given whatsoever. It would be there's not not only is it not reasonable to fail to execute a warrant, it's not necessary to wait for him to return to the country. Kennedy, your comment on this point, Garrett seems to rely at least in part on the fact that the prisoner then was in State custody, and there were issues of comedy, whereas in this case, your client was in Federal custody. Would you address that point? What role, if any, should our view of Garrett be influenced by comedy and similar considerations? Absolutely, Your Honor. The Federal status that my client was in in this case does distinguish it from Garrett, although under Garrett we believe we win as well, because after the term expired, the two years was up, he still was not brought up on the warrant. So we win under Garrett either way. But the Federal jurisdiction does make a difference. He is in Federal custody. It is not the same as when a government here, as in Garrett, when the Garrett court explained that it's difficult to issue a writ of habeas corpus ad prosequendum to get a person out of custody, State custody, into Federal custody to resolve the case. What would have been the procedure to get him out of Federal prison, wherever he was being held, I guess it was in Southern District of California, to take him up to the Northern District of California to execute the warrant? Do you know what the procedural steps are? In all the cases that I've handled, and in this case in 2012, Your Honor, what happens is they are brought – they make an initial appearance in the district in which they are in when the warrant comes up. So in Arizona, he had his initial appearance on this 2006 warrant from 2012, when he should have had that initial appearance between 2006 and 2008. So he made an initial appearance, and then he's removed to our district to face the petition here. And if they are to be executed, they are to be brought into Federal custody. Sotomayor, they should have executed the warrant when he was in custody. Either while he was in the district court custody after he pled guilty in 2007, while he was in Bureau prison custody, or what normally happens again, Your Honor, is when he is immediately released from Bureau prison's custody after finished serving his sentence. For instance, Garrett, after serving his sentence, he should have immediately been brought to this district. They failed to do so, and the government has not explained why it was reasonable or necessary for them to fail to execute that warrant. So what's the rule? If you were writing a holding, what would it be? I would say in this case it's such a narrow, limited circumstance that a defendant was required, the government was required to show why it was reasonable and necessary to actually delay this revocation. It was not necessary to wait for him to reenter the country. It should have been executed during the time frame that he was in Federal custody or immediately upon his release from Federal custody. It wasn't really impossible, so it wasn't necessary in Garrett to wait until he was out of State custody. But the Court gave a very broad reading of reasonable and necessary. Are you suggesting we should give a narrower reading of it here? It is a narrow reading, and I think in Garrett, the Court distinguished because it was a State court. It said, but it's technically not necessary, but we think it's okay anyway, is what the Court said in Garrett. Because obviously, they could have gotten him out of State custody and executed the warrant. It wasn't necessary to wait. The Court just said it was, you know, added burden. Well, then the question would become, to make it similar to our case, is in Garrett, if the defendant had been released from custody after serving the State sentence and the Feds never acted to execute the warrant 20 years from then when he commits a new violation, reenters the country, could they then go back to that old-stale warrant? It was necessary to at least execute it, Your Honor. This goes back to the Court's earlier question. It was at least necessary to execute it when he was released from Bureau of Prisons  Kennedy, I want to save any of your time. I do, Your Honor. I'm projecting a little bit over what you preferred, but that's the way it goes sometimes. So we'll save the rest of it here and hear from government. Good morning. May it please the Court. Susan Gray on behalf of the United States. Section 3583i is a jurisdictional statute that has two elements, as the Court recognized in Garrett. And here both of those elements were met. First, there's no question that the warrant was issued one year into the defendant's three-year term of supervised release. And secondly, the statute gives the Court the power, it extends its jurisdiction for a period that is reasonably necessary for the adjudication of matters arising before its expiration of a supervised release term. Let me ask a question about that. Yes. Is there anything in the record to show why the warrant wasn't executed when he was in Federal custody? No, Your Honor, there is no, nothing in the record. We know that he was arrested in violation of his supervised release terms imposed by Judge Jensen here in 2000 in the Northern District, his second conviction for illegal reentry. And for some reason, even though the warrant was issued and the probation officer was aware of it, nothing happened in the Southern District. Well, what do we do with a government's concession that this case simply slipped through the cracks? Should we even consider prejudice here? No, Your Honor. That's a due process issue. And as the defendant has waived that for purposes of appeal, it's not before the Court. But even if it was, there's been no showing of prejudice here, because as Judge Wilken noted, I'm going to, she said, I'm going, even if, I'm going to sentence him the same to the same sentence he would have had if he'd been brought up here in 2008. In essence, Your Honor, what the defendant is asking this Court to do is read into the statute that the failure to have a prompt revocation hearing strips the court of jurisdiction to adjudicate this prior violation. And the Court should reject that reading because, number one, the language of the statute doesn't provide for it. And secondly, this Court explicitly rejected that in Garrett. So in Garrett, it involves State custody, and the opinion indicates, well, it's not technically necessary, but we think it was excessively burdensome. Why does that – and it didn't extend that reasoning to if the defendant is in Federal custody. Why should we extend that to Federal custody? Well, I think Madden answers that question, and that is because it – which presented a situation very similar to that here, where you have a defendant in Federal custody in another district. And in that particular instance, and that's – this is in line with other cases holding that there's no duty to – for the government to writ a defendant into a district for purposes of supervisory lease violation while charges are pending or while he's serving that sentence. What about the argument that opposing counsel makes that as soon as he was released from Federal custody, at least he should have been – the warrant should have been executed? Your Honor, the statute doesn't require that. The statute is simply a jurisdictional statute. And Garrett recognized that there's no constitutional right to a prompt parole hearing prior to the execution of the warrant and to have that warrant executed. But it then considered the very issue that she's put before the Court here, which is, was, does the fact that he doesn't have a constitutional right foreclose his right to have that warrant executed and have a prompt hearing under 3583i? And the Court rejected that argument. And it said basically the language of the statute finds that the warrant triggers the Court's jurisdiction, but it doesn't trigger the right to a prompt hearing, because otherwise – and in that instance it was rejecting the idea that the government had to act. I think it's important to focus on the language of the statute. And the language of the statute isn't reasonable necessity for the delay. It is not directed at the actions of the parties. It is directed at whether it is reasonably necessary for the district court to – to extend its jurisdiction to deal with unfinished business. And why – why was this – why was the extension of the court's jurisdiction reasonably necessary? Shouldn't we remand to let the district court make that decision? Well, Your Honor, I think the district court implicitly made that decision because she said, I'm not concerned about any prejudice here. I'm going to go ahead and adjudicate this. And she indicated that the only reason the case – she considered the fact that there had been some delay, and she said the only reason you're here now in 2012 is that because when you were deported, essentially you got a pass in 2008, you came back illegally again for a tenth time. So she considered whether it was reasonably necessary, I think implicit in going forward. And certainly the language of the statute supports her ability to have done that. The defendant wants the court to read into the statute the reasonable necessity language in or unnecessary delay of Federal Criminal Procedure 32.1. But that is triggered only after the warrant is executed. And there's nothing in this statute, the language, that requires the court, the government to have executed that warrant. Certainly, in a perfect world, it would have been. But – Is there an outside limit? No, Your Honor. Apparently, there is not. And I say that under the – Theoretically, I mean, I know, for us, 20 years, 25 years, 30 years, is that okay? I think it would depend very much on the specific facts of the case. And certainly in this instance, where the defendant was out of the country for the period encompassed by this statute. And remember that this statute only applies from 2010 to 2012, when he was out of the country. We have the statute, and you – as you point out, there's no specific numerical limitation. But you mentioned prejudice. My colleagues have mentioned prejudice. Is that a factor we should consider in this, whether the defendant in this case was prejudiced by the delay? Your Honor, those are – that prejudice goes to due process. And as I said before, the defendant, although they raised that below, has waived it. But moreover, there's been no showing of prejudice here, even if he – Because he would have been in custody anyway, right? He would have been in custody, and frankly, there's no showing. The Supreme Court in Moody held there's no right to have a concurrent sentence. And in fact, the Court here could have, if she'd wanted, if she was concerned about any prejudice, sentenced him to time served in Arizona or also just given him a – no time. Well, the defendant was claiming this was structural error, therefore, no prejudice needs to be shown. I assume you disagree with that. Your Honor, we simply – our position is that this is simply a jurisdictional statute which does not address the actions of the parties, but the necessity of the court to go forward. And I believe that is – was also the Court's holding in Garrett, that the focus is on the necessity for the court to act, not whether or not it was necessary for a party to act. If there are no further questions, I would ask the Court to refer. Thank you for your argument. We'll hear rebuttal. I did want to quickly address the Court's prejudice question. This is not the case where he was brought up to custody right after he finished serving his sentence. There was a significant delay. Life circumstances changed. If he had been brought up here after serving the full 24 months, the question would be whether or not Judge Jensen at that time would have then imposed a consecutive 18-month term as Judge Wilkin did in this case later. It is quite a different thing because the Court here actually looked at a violation memo that was filed under seal by the government where the Probation Office even looked at the 2012 deportation and how many times he has violated it. Do you disagree that the prejudice argument is related to due process and that you've waived it as opposing counsel stated? We didn't raise the due process argument. It's separate than the statutory argument here. Under the statutory argument, we do not need to show prejudice. It's not written into the statute. Instead, the government must show why it was reasonably necessary. Okay. And one last point regarding the question, Your Honor, about whether remand would be necessary to address reasonable necessity. The Court and the government both agreed that there was error and that the defendant slipped through the cracks, and we would submit that in that situation, given these circumstances. Is it structural? It's structural. It is structural. And what case do you rely upon for that? It is a statutory argument. It is a statutory construction. You're saying the Court had no jurisdiction, right? That's the argument. Yeah. Okay. Okay. Thank you very much. Thank you both for your argument. The case just argued is submitted.
judges: Nelson, Smith, Ikuta